THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES HAMM, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRED GARDNER, Appellant.

County Court, Otsego County, May 16, 1931.

Donald H. Grant, District Attorney, and Joseph P. Molinari, Oneonta Police Attorney, for the People.

James P. Friery [Arthur B. Lamphier of counsel], for the appellant Hamm.

E. A. Mackey, for the appellant Gardner.

VAN WOERT, J. Charles Hamm and Fred Gardner have appealed from judgments of conviction in the City Court of Oneonta, entered respectively February 20 and March 4, 1931, following jury verdicts of guilty. They have assigned as error, calling for review, matters both technical and of merit.

A brief recital of facts is required. The appellant Fred Gardner stood charged with misdemeanor in violation of the Oneonta City Prohibition Enforcement Ordinance and his trial in Oneonta City Court was set for February 11, 1931. Frank La Bell was the prosecuting witness, having made the " buy " upon which the charge was based, and was under the People's subpœna. Late in the evening of February 10, 1931, one Albert Johnson went to the home of La Bell and, by threats of bodily harm and a technical assault upon La Bell's wife, coerced La Bell into absenting himself from the trial of Gardner. Johnson was identified by three witnesses the next day, was arrested, promptly confessed and provided the police with a sworn statement as to the facts of his crime and the circumstances that he claimed led up to the same. He was charged with misdemeanor in violation of section 2441 of the Penal Law, pleaded guilty and was sentenced to four months in

jail. His sworn statement, unsupported by other proof, was used as basis for informations against these appellants on charges of violation of the same section. Warrants were issued and appellants were put to trial and convicted.

Section 2441 of the Penal Law provides: " A person who wilfully prevents or dissuades any person who has been duly summoned or subpœnaed as a witness from attending, pursuant to the summons or subpœna, is guilty of a misdemeanor."

The first question raised by appellants involves the sufficiency of the papers upon which the warrants were issued, it being claimed that failure to show that La Bell did not appear at the Gardner liquor trial is omission of a necessary element of the crime charged.

With this claim of the appellants I cannot agree.

Johnson's crime in my opinion was complete when, with criminal intent, he went to La Bell's home and, by the overt acts described, sought to bring about La Bell's absence at the trial to which La Bell had been subpœnaed.

It is significant that the Legislature in enacting section 2441 employed the phrase " prevents or dissuades." These two words have not the same meaning. I have sought in vain for judicial interpretation of the word " dissuade," and counsel have been unable to suggest any precedent in legal literature. In such case we may seek a solution in study of the context of the whole statutory scheme and in determination of the accepted common meaning in general usage at the time the law was passed.

Article 218 of the Penal Law is entitled " Witness." The first section thereunder, 2440, is entitled " Bribing witness," and makes it a felony to *bribe or attempt to bribe* a witness to give false testimony, irrespective of whether such effort be successful in producing actually perjured proof. The third section, 2442, is entitled " Deceiving a witness," and makes it a misdemeanor to practice any fraud or deceit upon a witness " with intent to affect the testimony of such witness," irrespective of whether the testimony is actually affected or changed thereby. Section 2441, above quoted, lying in between, is a part of this legal scheme, and we may consider fairly that the legislative intent was to penalize *any deliberate tampering with witnesses,* and that *success* in such an endeavor is not a prerequisite.

In the realm of general usage we find the following definitions of the word " dissuade:"

" Dissuade. 1. To endeavor by arguments to persuade a person not to do some act; to advise or counsel against anything." (Encyclopaedic Dict. vol. 2, p. 1671.)

" Dissuade. 1. To advise or exhort against something; *attempt*

to draw or divert from an action by the presentation of reasons or motives." (Century Dict. & Cyclopedia, vol. 2, p. 1689.)

" Dissuade. 2. To *attempt* to change the purpose or alter the plans (of a person) by persuasion or divert by argument or appeal." (Funk & Wagnall's Practical Standard Dict. 1926.)

I conclude, accordingly, that the word " dissuades," as used disjunctively with the word " prevents " in section 2441, is equivalent to the phrase " attempts to prevent " and was so intended by the Legislature, and that it is not necessary to show upon a prosecution under section 2441 that the accused actually succeeded in keeping the witness from attending the trial.

More serious matters appear upon scrutiny of the trials and the evidence upon which the defendants were pronounced guilty.

The informations are identical. They charge each defendant with violation of section 2441 in that they did each " cause, procure, instigate, aid and abet to prevent and dissuade " the said La Bell from attending the Gardner liquor case trial. It is clear that neither appellant directly aided Johnson in his coercive acts and that the measures the latter employed were of his own manufacture and carried out by him alone without the actual or constructive presence of either Gardner or Hamm. Johnson's story, in brief, is that on the afternoon of February tenth he visited Gardner's place and had some talk with him " about the trial," Hamm not being present, and that later in the evening he again visited Gardner and had another talk, Hamm being present for a short time; that Gardner and Hamm in the course of the talk said the witness La Bell was " yellow " and " should be easy to scare " and " that if La Bell did not show up at the trial it would help a whole lot."

Johnson was asked: " Q. What did Gardner say? Anything else that you remember? A. Not any more than I have stated, that he told me about his coming trial and if this La Bell did not show up it would improve his case."

This is substantially the People's whole effort to connect Gardner and Hamm with Johnson's crime. The only other item is that when Johnson left Gardner at the door that evening he claims that Gardner said to him, " If you do anything up there, don't come back here."

Assuming Johnson's whole story to be true, it scarcely presents facts sufficient to constitute the crime charged. Certainly the defendants did not " cause " or " procure " or " instigate " Johnson's specific acts. No plan was proposed by either of them, nor did they employ or request Johnson to tamper with La Bell, nor did Johnson suggest to them that he was even willing to perform

such an act or that he was planning to do so. It appears at best that he followed his own inclinations in the matter and upon his own responsibility took steps to relieve his friend Gardner in a troublesome situation. The most that can be said against Gardner and Hamm, so far as the record goes — and on these appeals we may consider nothing else — is that their conversation aroused in Johnson a plan to do an act which he alone formulated and carried into execution. Whatever the intent or desires of Gardner and Hamm may have been, these were not translated into such positive action as to make them aiders or abettors in the subsequent crime. We may imagine that they had shrewd suspicions or even expectations as to what a man of Johnson's character might do, and even to have indulged a hope in that direction, but intent, motive or desire, however strong and clear, must be coupled with action to ripen into crime.

" While intent is an element in criminal law, mere intent does not constitute a crime, without action in pursuance of the intent." (*Boliver* v. *Monnat*, 135 Misc. 446.)

" The essential element in aiding and abetting in the commission of a crime is taking an active part with a criminal intent to commit the crime." (*People ex rel. Perkins* v. *Moss*, 113 App. Div. 329, 338.)

The necessary element of action by word or deed on the part of Gardner and Hamm, aimed in the direction of committing a crime, is unmistakably absent, and neither can be said to have " aided " or " abetted " as charged in the informations.

Johnson was concededly an accomplice. In such case the law (Code Crim. Proc. § 399) requires corroboration by other evidence tending to connect the defendants with the commission of the crime. His confession, wholly inadequate as I believe, was supported, so far as the participation of Gardner and Hamm is concerned, by but one witness, a woman with whom Johnson " had been going " for some time. She was with him at the Gardner place in the evening and saw him with Gardner and Hamm, but could recall hearing voices only and remembered no conversation; admitted having had some seven drinks of gin and that she was " not perfectly sober;" disputed Johnson as to the time, and on cross-examination testified that she knew " nothing " about the case. In her statement that Gardner said to Johnson " not to return if he had any trouble " she was not supported by the People's witness, the taxi driver, who was present at the time.

The People's case rested upon the foregoing facts, provided by Johnson and corroborated only by the woman's testimony, and upon the further fact, not disputed, that the defendants and

Johnson had actually been together at the Gardner home some time during the evening of the crime. In a number of material particulars Johnson was plainly impeached and admitted serious false testimony. He had served two terms in Auburn for felonies and admitted other criminal convictions.

The People contend that the rules as to nature and extent of corroborative testimony required as laid down in the famous Lieutenant Becker case (*People* v. *Becker*, 215 N. Y. 126) apply to these cases and should control. That case and these are clearly distinguishable in an important feature. In the *Becker* case the accomplices, three in number, testified to a murder plan definitely originated and motivated by Becker. In these cases the one accomplice, if believed, provides no such proof of a planned crime. The opinion in the *Becker* case significantly refers to the equally celebrated *Patrick* case, where Judge GRAY writes: " It is sufficient if he is corroborated as to some material fact, or facts, which go to prove the connection of the defendant with the criminal intent *and its execution.*" [Italics are writer's.] (*People* v. *Patrick*, 182 N. Y. 131, 156.) The evidence presented on these appeals is wholly deficient in this latter vital requirement.

Johnson's story called for most cautious reception by the jury and careful treatment by the court. Even if there had been presented evidence of corroboration sufficient to have justified the court in permitting the jury to consider its weight and credibility (of which I have much doubt), the jury were not cautioned in their duty, nor was it made clear to them that Johnson's credibility was the prime factor in the cases. In the Gardner case, for example, the defendant requested, " I ask your Honor to charge that if the jury disbelieves the testimony of Albert Johnson there can be no conviction." The court's refusal of this proper request was most prejudicial, for without Johnson's testimony there could not possibly have been a conviction.

The zealous friendliness of the court to the prosecution's side must have been most apparent to the jury, an element of ·vital importance in close cases and quite enough to have turned the scale in these now presented for review.

This animus was shown in many ways throughout these trials and the jury received the cases following such remarks from the court as substantially enjoined them to act as prosecutors rather than as calm and dispassionate triers of the facts.

Upon Lieutenant Becker's first appeal, the Court of Appeals, in reversing, said: " However unintentionally, no spirit of hostility and of discrimination on the part of the court should seem to be generated which would envelope his case and permeate the minds of

the jury." (*People* v. *Becker*, 210 N. Y. 274, 289.) Although a man's life was there at stake, the principle involved is properly applied in any criminal case and must be considered here.

For failure to present facts sufficient to constitute the crimes charged, for inadequate corroboration of the accomplice, for errors in jury instructions, and for the grave reason that defendants cannot be said to have received fair trials, these judgments must be reversed.

The testimony of Johnson is the key to the People's case. I do not see how it can be changed. He is already badly impeached and any change now can but aggravate his offense in this regard. His original story is inadequate. Further trials would involve fruitless labors on the part of the prosecution and unwarranted expense and hardship to the defendants.

Judgments reversed, defendants discharged, and bail exonerated.