THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FRANCIS J. NICOSIA and JOSEPH LECCI, Defendants.

County Court, Kings County, September 10, 1937.

*William F. X. Geoghan, District Attorney* [*Harry J. Walsh, Assistant District Attorney,* with him on the brief], for the plaintiff.

*John Spinelli* [*David F. Price* of counsel], for the defendant Francis J. Nicosia.

BRANCATO, J.   The defendants above named were both indicted by the grand jury charging them with the crime of subornation of perjury in that on or about and between March 15, 1934, and October 15, 1934, in the county of Kings, they did corruptly and feloniously induce, solicit and suborn Giovanni Autuori and Ciro Loffredo to commit perjury during the trial of the case of Mary Vento, administratrix, etc., v. The South Brooklyn Railway Company in the Supreme Court of Kings county.

By an order of one of the judges of this court, the defendant Nicosia obtained permission to inspect the grand jury minutes, and now moves to dismiss the indictment as far as it accuses him of the crime therein alleged, upon the ground that the evidence adduced before the grand jury was insufficient in law to warrant an indictment.

After examining the grand jury minutes, I am constrained to grant this defendant's motion for the following reasons:

*First.* The testimony of the two prosecuting witnesses in chief lacks sufficient probative force to connect the defendant with the commission of the crime charged.

*Second.* These two prosecuting witnesses are accomplices, and their testimony was not sufficiently corroborated as required by section 399 of the Code of Criminal Procedure.

*Third.* Admission of incompetent and prejudicial evidence.

The defendant Nicosia is a practicing attorney and his codefendant was employed by him as investigator.   On December 30, 1933, one Guiseppe Vento was accidentally killed by a trolley car operated by the South Brooklyn Railway Company.   Soon thereafter a suit was instituted by his widow, Mary Vento, as administratrix, to recover damages for the death of her husband.   Charles Sorace was her attorney of record, and he made an arrangement whereby the defendant Nicosia should investigate and prosecute said action as counsel.   The case came on for trial in the Supreme Court of Kings county in October, 1934, resulting in a verdict for $20,000 in favor of the plaintiff.   The South Brooklyn Railway Company appealed from the judgment entered thereon, which was reversed by the Appellate Division of this Department, and a new trial ordered on the ground that the verdict was against the weight of evidence.   (See 245 App. Div. 830; 271 N. Y. 614.)   The case was never retried but was settled thereafter for the sum of $1,500.

The two principal witnesses who testified on behalf of the plaintiff administratrix were Ciro Loffredo and Giovanni Autuori, whom the defendants are now accused of having suborned.   They have since gone before the grand jury, recanted the testimony which they gave in the Supreme Court, admitted that they never

saw the accident in question, and that they committed perjury, as a result of which the present indictment was found against the defendants.

The evidence recorded in the grand jury minutes leaves no room for doubting the perjury committed by Loffredo and Autuori during the Vento trial. Their testimony points directly and unequivocally to the defendant Lecci as the individual who hired and schooled them to so falsely testify. They involve also another investigator of the defendant Nicosia, one Thomas Galbo, who, for some reason not disclosed in the record, was not indicted. Lecci and Galbo, as investigators of the defendant Nicosia, occupied the same room in Nicosia's offices. Lecci, shortly after Nicosia was employed as counsel in the Vento case, visited Loffredo and Autuori in their respective homes and readily induced them to accept his offer to make some easy money by testifying falsely in an accident case. He said that he would tell them everything they should say at the trial, took them to the scene of the accident and there gave them instructions as to how everything happened. By no uncertain terms they charge Lecci and Galbo to be the individuals who caused them to commit the perjury. Lecci later took them to Nicosia's office and introduced them to him for the first time. On this occasion Lecci obtained a written statement of the accident from Loffredo and Autuori which they signed after Lecci had read it to them. Nicosia was not present — he was in another room when this took place.

Several weeks after Lecci had taken Loffredo and Autuori to the scene of the accident and there told them what they were to say at the trial, he again visited the fatal place with these two witnesses. This time, however, he was accompanied by Galbo and defendant Nicosia. The prosecution contends that this incident links Nicosia with the commission of the crime alleged in the indictment. Autuori's testimony in support thereof is as follows: " Q. Who went that time? A. Myself, Loffredo, Lecci and the lawyer. Q. Were you introduced to the lawyer? A. Yes, sir. Q. Was the lawyer's name given to you as Nicosia? A. Yes, sir. Q. Did you go to the place of the accident? A. Yes, sir. Q. When you got there who did the talking? A. The lawyer spoke. He said, 'Here the accident happened and you are going from there where we are standing.' Q. And did the lawyer tell you what you would have to say in court? A. Yes, the lawyer and the man working there, both of them spoke."

It is to be noted that what might otherwise seem to be incriminating testimony against Nicosia was elicited from the witness by two obviously leading and suggestive questions: " Was the lawyer's

name given to you as Nicosia?" and " Did the lawyer tell you what you would have to say in court?" Autuori's " Yes " to this question, however, loses much of the significance it portends to convey, when taken in connection with his subsequent direct testimony regarding the Vento trial, that Lecci told him what to say: " Q. And the same man who asked you the questions in court, Nicosia, was the man who went to the scene of the accident with you some time before, is that right? A. Yes, sir. Q. And was the story that you told in the Supreme Court the same story that you were told by Lecci to tell? A. Yes, the lawyer, the young man working there told us what to say and we said it."

Autuori's testimony is varying. It is difficult to reconcile his affirmative answer to the question, " Did the lawyer tell you what you would have to say in court," and his latter statement, " Yes, the lawyer, the young man working there told us what to say and we said it." He is obviously laboring under the misapprehension that Lecci was a lawyer working for the defendant Nicosia, although he definitely charges Lecci as the man who told " us " what to say in court and we said it.

Loffredo's testimony on this point is quite different and seems to exculpate Nicosia. He stated that when he arrived at the scene of the accident with Autuori, Lecci, Galbo and Nicosia, the latter asked them " how we see when the man was hurt," and then for the next half hour Nicosia busied himself taking photographs. He subsequently testified as follows: " Q. Did Sorace ever tell you what to say in this case? A. No. Q. Who were the people who spoke to you about this case? A. Lecci. Q. Who else? A. Galbo. Q. How about Nicosia, did he also talk to you? A. Nicosia didn't tell me nothing what to say. Q. Didn't you tell ne yesterday, Mr. Loffredo, when you were questioned in Nicosia's office that Nicosia asked you questions and you would say ' Yes ' or ' No?' A. No, Galbo asked me the questions."

Loffredo and Autuori are both witnesses for the prosecution. Their testimony is clearly inconsistent and the burden is upon the prosecution to reconcile it, since the defendant is safeguarded with the presumption of innocence. What is intended as direct evidence against Nicosia is shrouded in doubt, although there should be no difficulty to obtain direct and convincing proof, if it exists, and if the two perjurers are willing to tell the truth. Who knows better than Loffredo and Autuori whether or not Nicosia coached or schooled them to testify in the Vento case? The testimony of these two witnesses is conflicting and lacks probative value sufficient to directly connect Nicosia with the commission of subornation of perjury. (*People* v. *Hamm*, 140 Misc. 335.)

While there is ample evidence to connect the defendant Lecci and his coworker, Galbo, with the commission of the crime charged in the indictment, the activities of these two individuals should not be confounded so as to impute criminal responsibility to the defendant Nicosia unless it can be shown that Nicosia, by some conscious act, aided and abetted them in these doings. (Penal Law, § 2.) Mere association, suspicious circumstances, or even opportunity are not of themselves sufficient grounds upon which to base criminal responsibility. (*People* v. *O'Farrell*, 175 N. Y. 323; *People* v. *Butler*, 62 App. Div. 508; *People* v. *Cronk*, 40 id. 206; *Peeple* v. *Courtney*, 28 Hun, 589; *People* v. *Kingsley*, 166 App. Div. 320.) To warrant an indictment the grand jury should have legal evidence before them (Code Crim. Proc. § 256) which, when taken together, would be sufficient, if uncontradicted, for a petit jury to convict the accused. (Code Crim. Proc. § 258.) This means evidence which overcomes the presumption of innocence, still a constitutional safeguard of the accused even in the grand jury room (*People* v. *Lindenborn*, 23 Misc. 426); evidence which can justify a verdict of guilt beyond a reasonable doubt. (*People* v. *Acritelli*, 57 Misc. 574.) Sections 256 and 258 of the Code of Criminal Procedure are protective measures intended to safeguard the defendant's right to the presumption of innocence, and, therefore, an indictment based extensively on conflicting and hearsay evidence, leading and suggestive questions and prejudicial testimony affords justification for its dismissal. (*People* v. *Glen*, 173 N. Y. 395; *People* v. *Willis*, 23 Misc. 568; *People* v. *Burleson*, 119 id. 107.)

The prosecution seems to advance the theory that if the defendant Nicosia did not directly suborn Loffredo by affirmative action, he accomplished the same result by indirection, *i. e.*, by surreptitiously asking Loffredo leading and suggestive questions embodying therein the very information he desired to convey to the witness. The following examination of Loffredo illustrates the contention: " Q. When Nicosia spoke to you outside the place on Sixth Street, with Galbo and Lecci, would he put the questions to you in this manner: ' Loffredo, you were here, and here,' and then you would say ' Yes ' and ' No?' A. Yes. Q. And then would he say, ' Loffredo, you saw this man being struck by the car?' A. Yes. Q. And you would say ' Yes ' or ' No? ' A. Yes. Q. In other words, when Nicosia spoke to you this time, or talked with Galbo and Lecci, he put to you leading questions which you were to answer ' Yes ' or ' No.' Is that right? A. Yes. Q. And he told you in those questions what he expected you to say? A. When this

question he asked 'You was in this place?' I would say 'Yes, sir.' Q. You felt that he knew all about it and he would put to you a question and you said 'Yes, sir?' A. Yes."

If the defendant adopted such subterfuge as the prosecution herein suggests, he should not be permitted to escape the responsibility of an indictment. But the difficulty here is, however, that there is no legal evidence to substantiate any such claim, except, perhaps, the suggestion contained in the questions of the inquisitor who, in the examination of Loffredo, seems to have adopted the very vicious method which is now imputed to the defendant. In this we are reminded of the old grammarian who, wanting to condemn the use of ending a sentence with a preposition, enunciated the rule of syntax that "A preposition should not be used to end a sentence with." If it was wrong for Nicosia to adopt the method of conveying information to Loffredo through the medium of leading questions, it was equally censurable for the assistant prosecutor to present that evidence to the grand jury in the same suggestive manner. It should be remembered that Loffredo and Autuori are confessed perjurers and accomplices, and, assuming that they were so pliable as to easily acquiesce to the suggestions to commit perjury contained in Nicosia's alleged leading questions, we have no assurance that their susceptibility and adaptability to testify conveniently left them when they arrived at the threshold of the grand jury room. Experience teaches us that this type of individuals are motivated by self-preservation and not by any sense of righteousness or other lofty ideals when recanting previous perjured testimony and are testifying against former associates. We should bear in mind " ' to be chary of an accomplice's testimony as there are so many reasons which may lead one to shift to, or share the crime with another.' " (*People* v. *Silverman*, 252 App. Div. , 149161.) Although they are not disqualified as witnesses, their testimony should be scrutinized with the utmost caution and circumspection, especially when it is elicited by leading and suggestive questions.

If the defendant Nicosia suborned Loffredo and Autuori, as alleged in the indictment, they are all *particeps criminis* (*People* v. *Barber*, 118 Misc. 740; *People* v. *Evans*, 40 N. Y. 1; *People* v. *Leibowitz*, 236 App. Div. 736; *People* v. *Markan*, 123 Misc. 689; *People* v. *Batt*, N. Y. L. J. Aug. 13, 1937, p. 390), and the testimony of the latter must, therefore, be corroborated by evidence which tends to connect Nicosia with the commission of the crime. (Code Crim. Proc. § 399.)

Mrs. Louise Loffredo, wife of the witness Loffredo, testified at some length, but outside of the fact that she twice saw the defendant

Lecci in her home talking to her husband for a few moments and then leave, her entire testimony should have been excluded. What Loffredo told his wife about the Vento case and any advice she may have given him to tell the truth concerning his perjury do not constitute corroboration of the perjury nor of the alleged subornation of perjury but a flagrant violation of the hearsay rule as the following illustrates: " Q. Did you have a talk with your husband about this matter yesterday? A. Yes. Q. What did you advise your husband to do, to tell the truth? A. Yes. Q. Did he tell you he was telling the truth to me? A. Yes. Q. Did he tell you he never saw the accident? A. Yes, he didn't see the accident."

Neither does the testimony of Charles Sorace supply the corroboratory evidence required by section 399 of the Code of Criminal Procedure. He testified that as an office associate of Nicosia he saw but did not hear Loffredo and Autuori talk to Nicosia several times. This circumstance, however, does not constitute corroboration of defendant's alleged criminal participation. In *People* v. *O'Farrell* (175 N. Y. 323) the court stated: " We find that there was no proof aside from the evidence of the accomplices which tended to show that the defendant was connected with the crime, except the mere fact that he was shown to be with one of the accomplices in a place and under circumstances where he might have assisted in its commission, and that he loaned one of the accomplices his overcoat. * * * ' What appears to be required is, that there should be some fact deposed to, independently altogether of the evidence of the accomplice, which, taken by itself, leads to the inference not only that a crime has been committed, but that the prisoner is implicated in it.' "

It is within the purview of common knowledge based upon our experience that witnesses are not infrequently requested to attend a lawyer's office, there to consult with counsel in preparation for the trial of some pending action. An attorney not only has the right but efficiency demands that he should consult with the witnesses without having to face the imputation of suborning them to commit perjury. Such acts are as consistent with innocence as they are with guilt. It is indeed difficult to determine with any degree even of probability how the independent fact deposed by Sorace that he several times saw Nicosia talking with Loffredo and Autuori can lead to the inference that Nicosia suborned Loffredo and Autuori when Loffredo himself testified that " Nicosia didn't tell me nothing what to say," and Autuori's testimony is inconsistent and varying.

The direct legal evidence intended to connect Nicosia with the commission of the crime charged is of such quality as could justify

a grand jury to find no indictment. It is not reasonably convincing. It was serious error, therefore, to have introduced irrelevant evidence tending to prejudice the grand jurors against the defendant Nicosia. " Adherence to our fundamental rules of evidence is the safest and wisest way to administer the criminal law." (*People* v. *Purtell*, 243 N. Y. 273; *People* v. *Smith*, 172 id. 210; *People* v. *Gassett*, 112 N. Y. Supp. 555.)

The witness Sorace was permitted to state to the grand jury that the Vento verdict for the sum of $20,000 was reversed by the Appellate Division and a new trial ordered upon the ground that " the verdict was against the weight of evidence," and that, instead of a retrial, the defendant Nicosia settled the case for $1,500. He stated also that there is " apparently something irregular about the case."

This line of testimony was irrelevant to the issue before the grand jury and prejudicial. The subornation of perjury charged in the indictment was completed when Loffredo and Autuori finished testifying in the Vento case. Whether or not the Appellate Division affirmed or reversed the verdict of the jury upon the ground that it was contrary to the weight of evidence or the fact that the case was thereafter settled for $1,500, does not establish a belief as to the existence of perjury or subornation of perjury in the court below. These are collateral facts incapable of affording any reasonable presumption or inference of the accusation contained in the indictment. Loffredo and Autuori, testifying as plaintiff's witnesses in the Vento case, might have been ever so honest and truthful and yet their testimony be not sufficient to sustain the jury's verdict on appeal, and if the plaintiff felt that further litigation would have been useless, no presumption or inference can reasonably be deduced therefrom that the settlement of the case after reversal by the Appellate Division was an act of plaintiff's counsel tending to connect him with the perjury of the witnesses or his own alleged subornation of perjury. There is great danger that the grand jurors, without proper instructions, might have construed the fact of the reversal as indicative that the Appellate Division passed upon the question of perjury and subornation of perjury and found against the perpetrators thereof, when no such issue was before the appellate court. In fact, several of the grand jurors questioned Mr. Sorace as follows: " How much did the widow get?" and " Didn't it seem strange to settle the Vento case for $1,500?" Mr. Sorace had testified to a direct question that the $20,000 verdict had been reversed by the Appellate Division because it was " against the weight of evidence." The assistant prosecutor

interpolated this answer by the following question: " In other words, the Appellate Division said that the verdict was against the weight of probable evidence?"

Not only was the fact of the reversal of the verdict by the Appellate Division irrelevant to the issues herein presented and prejudicial but the comment of the assistant prosecutor tended to focus the grand jurors' attention upon this harmful testimony.

In conclusion, as I have already indicated, sections 256 and 258 of the Code of Criminal Procedure are protective measures intended to safeguard the right which every individual accused of crime has to the presumption of innocence guaranteed by our Constitution. It is as imperative, therefore, not to indict on evidence which at best can create but suspicion of guilt, as it is to indict when competent legal evidence is adduced to warrant an indictment. The obligation is no more cogent in the latter case than it is in the former. (*People* v. *Barbato*, 254 N. Y. 170.)

I am not unmindful of the fact, however, that Lecci, an employee of the defendant Nicosia, after finding the two willing and convenient witnesses, schooled them with the assistance of Galbo, another investigator of the said Nicosia, within the very shadow of the latter's office. This is a very suspicious circumstance which might be more effectively advanced against him before another tribunal. The fact still remains, however, that suspicion alone, no matter how impelling, does not warrant an indictment. Adherence to the standards prescribed by sections 256 and 258 of the Code of Criminal Procedure, not to indict except upon legal evidence, which, if uncontradicted or unexplained, would warrant a petit jury to convict the accused beyond a reasonable doubt, constitutes a security from unjust and unlawful prosecution, which has always been regarded a basic consideration for the establishment and the continuance of our present grand jury system.

An indictment found in violation of these standards should be dismissed.

Motion granted. Submit order.