THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* FRANCIS J. NICOSIA and Others, Defendants.

County Court, Kings County, March 11, 1938.

*William F. X. Geoghan, District Attorney,* for the plaintiff.

*John Spinelli* [*David F. Price* of counsel], for the defendant Francis J. Nicosia.

FITZGERALD, J.   In June, 1937, the defendant, together with Joseph Lecci and Thomas Galbo, was indicted for subornation of perjury.   After an inspection of the grand jury minutes the indictment was dismissed with leave to resubmit to the grand jury.   (*People* v. *Nicosia*, 164 Misc. 152.)

On November 29, 1937, the pending indictment was filed charging the above named persons and the defendant with subornation of perjury in the first degree.

The indictment contains two counts; the first charges the subornation of Giovanni Autuori alias John Autuori, the second count the subornation of Ciro Loffredo.

The indictments are identical.

An inspection of the minutes of the grand jury which found the pending indictment was granted on December 23, 1937.

The defendant is an attorney and counselor at law. The charges arise from the testimony of Autuori and Loffredo in a negligence action in the Supreme Court in this county. The facts are very fully stated in the opinion on the former motion (*People* v. *Nicosia, supra*).

Since the argument of the pending motion two questions involved herein have been passed upon in the Appellate Division.

In *People* v. *Gondelman* (253 App. Div. 924) it is definitely settled that the suborned witness is an accomplice, whose testimony is insufficient unless corroborated.

It is urged on argument of this motion, however, that while Autuori and Loffredo might be accomplices so far as each was suborned, that, although all the transactions and conversations alleged to have taken place between the defendant and themselves were at the same times, that Loffredo was not an accomplice of defendant in the subornation of Autuori and *vice versa*. On argument I expressed dissent to this contention. I am now fortified in my opinions by the decision in *People* v. *Batt.* (165 Misc. 540; affd., 253 App. Div. 718.)

In that case motions were made to dismiss two indictments in which the defendant was charged with suborning Rocco Piteo and Samuel Reich. Separate indictments were found, while in the instant case the separate crimes were charged in different counts in the same indictment. (Code Crim. Proc. § 279.)

It was there held that Piteo and Reich were accomplices, and their testimony required corroboration.

A conviction for perjury cannot be had upon the testimony of one witness. (*People* v. *Stone*, 32 Hun, 41; *People* v. *Root*, 94 App. Div. 84; *People* v. *Doody*, 172 N. Y. 165; *People* v. *Gilhooley*, 108 App. Div. 234; affd., 187 N. Y. 551; *People* v. *Kupperschmidt*, 237 id. 463; *People* v. *Gondelman, supra*.)

The rule is the same in prosecutions for subornation of perjury. (*People* v. *Evans*, 40 N. Y. 1.)

When oral evidence is relied upon, it is necessary to produce at least two witnesses, or if only one witness, there must be testimony

of independent circumstances which will constitute corroboration. (*People* v. *Henry*, 196 App. Div. 177; *People* v. *Batt, supra.*)

The testimony of two accomplices is no better than that of one. (*People* v. *O'Farrell*, 175 N. Y. 323.)

The corroborating testimony relied upon herein is (a) that the suborned witnesses were present on several occasions in the office of the defendant. Such proof by itself does not constitute corroboration. (*People* v. *O'Farrell*, 175 N. Y. 323.) (b) That defendant's conduct in the trial of the negligence action, where the perjury is alleged to have been committed, was such a circumstance as to constitute the necessary corroboration. While this question was raised on the former motion it is not discussed in the opinion rendered thereon, although it must necessarily have been determined.

There was testimony by the suborned witnesses that they had been present on several occasions at the office of the defendant prior to the trial; that on such occasions they had been drilled by defendant. Sorace, the attorney of record, testified to their presence at the defendant's office, and as to their presence with defendant in his private office. He disclaims knowledge of what transpired during the meetings.

Part of the cross-examination of Autuori in the trial of the negligence action is as follows: " Q. Did you go to see the lawyer? A. No, I had no business to go to see a lawyer. Q. Didn't you ever see the lawyer? A. I saw a man coming to see me and brought me this paper, this summons, but I never saw a lawyer. Q. May I see that paper? [Document handed to counsel.] Q. This paper which you show me is a subpœna dated the (blank) day of September of this year. Is that the first time any person ever came to see you about this case? A. The first time; yes, sir. Q. And is that the first time that you ever talked, if you did then talk, to anyone from the lawyer about this case? A. Yes, sir; the first time. Q. Now, let me understand. Two days after this accident, on the 2nd of January, your friend or acquaintance came to you and told you about what he had read? A. Yes, sir. Q. And then you didn't go and see the widow at any time? A. I did not. Q. And the next thing that you ever heard about this case, from the widow, or from her lawyer or anyone representing her lawyer, was a few days ago when you received a subpœna to come to the court? A. Yes, sir. Q. And you never gave your name and address to anyone representing the widow or the widow herself, did you? A. The only one who had my name and address was my friend who came to tell me about the accident, that is all. Q. Now, after you got this subpœna, this paper that you have shown me, did you then go to the lawyer's office? A. No, sir. Q. Did you

talk to the lawyer at any time before you came to this courthouse? A. No, sir. Q. Did you talk to anyone representing the lawyer before you came to this courthouse? A. No, sir. Q. And after you came to this courthouse did you talk to the lawyer or anyone representing him before you went on the witness stand? A. No, sir. Q. So that yesterday afternoon when you went on the witness stand, was the first time that you ever told anyone connected with the widow or her lawyers about this case, is that true? A. You are right; this is the first time."

Loffredo's testimony was to the same effect.

This testimony was given in the presence of Nicosia, an experienced trial lawyer. He made no attempt to correct the witnesses, nor did he call their attention to what might have been an inadvertence, or misunderstanding on their part of the purpose of the questions. He did nothing on redirect to straighten out the witnesses. The examination did not consist of a casual question, but was pointed, prolonged and directed to ascertain what contact the witnesses had had with defendant prior to the trial.

That defendant was not aware of what happened appears from the testimony of Sorace, that he recalled defendant's summation (which was not reported), and that defendant "had dwelt on the subject to the jury and said that that witness was probably mistaken, and Mr. Nicosia did talk to him because he said also to the jury that that was a trick question asked by defendant's counsel, and said ' Did you ever talk to anybody about this case? ' and the witness would become frightened and said ' No.' He also dwelt upon other phases in the case and called the jury's attention to the fact that he had talked with Mr. Autuori before the trial of this action, and would be foolish to put the witness on the stand unless he had talked to him."

Defendant insists that that testimony completely absolves him from any effort to conceal the facts. To me it has the reverse significance. Any one with any experience in jury trials will realize the difference to an examining lawyer of knowledge before the interrogation is completed, of false or inadvertent statements of a witness, and knowledge of such fact acquired only after he has finished his summation and is precluded from further inquiry. Statements by counsel for the party having the final word in his summation based upon assumptions rather than upon the testimony, afford no comfort to the lawyer enlightened when the knowledge is of no avail.

*People* v. *Deitsch* (237 N. Y. 301) was a case of rape in the first degree. The victim was eight years of age. The only corroboration was the testimony of a witness that she saw defendant standing at the gate of the house shortly before the crime. Defendant

denied his presence, and attempted to establish an alibi. The jury found against him, and held that the jury might infer that his presence in the street, under the circumstances, was a guilty presence.

*People* v. *Gorsky* (236 N. Y. 673) is to the same effect. "Gorski," said the court in the *Deitsch* case (*supra,* p. 303), "denied that he was present at the scene of the crime and, as in this case, set up a false alibi. We held that the presence of Gorski in the neighborhood falsely denied by him was sufficient corroboration. His denial tended to show that his presence was not innocent."

Conduct may be more persuasive and conclusive than oral declarations.

If this question were now raised for the first time, it may be that a conclusion different from that reached when the prior motion was determined might result. It cannot be said, however, that the question is so free from doubt as to justify a refusal to acquiesce in the decision reached by my colleague.

In his opinion stress is laid upon the introduction of irrelevant and incompetent testimony of so prejudicial a nature that it must necessarily have influenced the grand jury. Testimony was elicited that a verdict of $20,000 awarded by the jury had been set aside by the Appellate Division, as against the weight of evidence, and that subsequently the action had been settled for $1,500. Several of the grand jurors questioned the witness as to the amount received by the widow as a result of the settlement.

Such testimony was not given before the second grand jury, and the evidence upon which the pending indictment is based is not affected by that vice. A reading of the opinion, however, discloses that even if such evidence had not been presented the testimony did not meet the requirements of the statute. (Code Crim. Proc. § 399.)

The defendant is an attorney and counselor at law actively engaged in practice. If this indictment be upheld and he be put to trial and convicted, a subsequent reversal and a dismissal then of the indictment on the ground that the evidence was insufficient as corroboration would be of little help to him. Irreparable damage to his reputation would have been done. No subsequent dismissal of the indictment could repair the injury nor restore him to his standing in public esteem.

Justice it seems to me under the circumstances imperatively demands that the motion be granted. It will then be possible for the People to have the law settled by an appellate court, in advance of the trial, and a situation such as resulted in *People* v. *Reed* (276 N. Y. 5) will be avoided.

Motion granted.