J. Kenneth Servé, J.
The defendants were jointly indicted by an Orleans County Grand Jury for the crime of murder in the first degree. The indictment, substantially in the common-law form, contained two counts, and in the first count the defendants were charged with killing one Jose Torres by shooting him, and in the second count they were charged with killing Norine Margaret Russell by shooting her.
Each of the defendants was heretofore granted an inspection of the Grand Jury minutes (28 Misc 2d 306, 308), and, following the inspection of the minutes each of the defendants moves to have the indictment dismissed. In this decision, the motion for each defendant will be taken up separately.
I.
Motion of the Defendant Rodriguez for Dismissal of Indictment
The defendant Rodriguez has asked for an order dismissing the indictment on the ground that the same is contrary to law, illegal and invalid, in that the same was not found on sufficient legal or adequate evidence. It is claimed on behalf of the defendant that the minutes of the Grand Jury show that hearsay, incompetent, conclusory, irrelevant, immaterial and illegal evidence were received by the Grand Jury and that the District Attorney made no effort to limit testimony that might be admissible against one defendant and not against the other, to the proper defendant.
A study of the minutes of the Grand Jury discloses that in the early morning hours of January 22, 1961, the dead bodies of Jose Torres and Norine Margaret Russell were found in the Town of Shelby, Orleans County, New York. Both had been shot and had died as the result of the bullet wounds. The autopsy showed that Torres had been shot four times and Russell had been shot once. In the evening of the same day the defendants were taken into custody and questioned relative to the alleged slayings. During the interrogation of the defendant Rodriguez, he signed a statement in which he stated that on the evening of January 21, 1961 he, armed with a gun, and the defendant Carde and a friend by the name of Tito *312 Vargus were in a bar and grill known as the Green Front in Medina, New York, and during that evening, while the defendants and Vargus were present, the victims, Torres and Russell, were also at the Green Front. Rodriguez further stated that he suggested to Vargus and Carde to take Torres and Russell out to the country and kill them so that, when they got Torres’ car, Vargus and Rodriguez could go to Florida with it. In this statement, which was presented to the Grand Jury, Rodriguez said that he asked Torres to take him to Middleport, New York and that Torres, who had a 1954-1955 Chevrolet automobile, did agree to make the trip, and that thereupon they all entered the Torres’ car. Torres drove the automobile and Norine Margaret Russell sat on the front seat beside him, and Rodriguez, Vargus and Carde rode in the back seat of the car. On the return trip from Middleport they all rode to the hamlet of Shelby and they turned right and went to a Zambito’s farm (in an oral admission Rodriguez stated that Vargus had asked him if he knew of a secluded spot and Rodriguez stated that he knew of this place out near Shelby because he had formerly worked for Zambito Brothers and he had worked in this location). Rodriguez then told Torres to stop the car and at that point he drew his gun and shot Torres and then shot Russell. That after Torres got out of the car and fell on the ground, and lay on his back, Rodriguez shot Torres twice. Rodriguez further stated that while this was going on Carde got out of the car and started running to Medina. After the killing Rodriguez and Vargus attempted to drive the car away, but were unable to, because it became stalled in the snow.
The testimony also discloses that defendant Rodriguez made oral admissions in which he stated, three days prior to January 21, 1961, that “ if it was necessary that he would kill somebody to take a car ’ ’ and also that at the scene where the slayings took place that he told Torres to get out of the car and that he wanted the car, and after he shot Torres the first time that Rodriguez noticed that Torres was still alive, “ so he fired two more shots at him ”.
The Legislature has provided as to the degree of evidence which will permit a Grand Jury to find an indictment. Section 251 of the Code of Criminal Procedure provides as follows: “ The Grand Jury ought to find an indictment, when all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury.” The Grand Jury is the arbiter of the credibility and of the weight to be given to the evidence (People *313 v. Eckert, 2 N Y 2d 126). In finding an indictment, the Grand Jury must have before it legal and competent evidence as to each of the elements of the crime.
In presenting the evidence to the Grand Jury, the statement of the defendant Garde was admitted into evidence and read to the Grand Jury. No cautionary advice was given to the Grand Jury at anytime, that the signed statement of Carde did not constitute any evidence against Rodriguez, and that, as to Rodriguez, such statement was hearsay evidence and consequently incompetent and irrelevant. However, it cannot be said that Rodriguez was materially prejudiced by the Grand Jury’s hearing Garde’s statement. In substance Garde stated that Rodriguez shot Torres and he did it because he wanted to get Torres’ car. From Rodriguez’ own statement and oral admissions, the Grand Jury could have arrived at the same conclusion. The law is well established in this State that if the legal evidence before the Grand Jury is sufficient to warrant the indictment, it will not be set aside even if illegal evidence was received by the Grand Jury (People v. Keavin, 123 Misc. 56 ; People v. Grout, 174 App. Div. 608, 615 ; People v. Sexton, 187 N. Y. 495). As to Rodriguez the Grand Jury could have laid aside the illegal and hearsay testimony introduced through Garde’s statement, and this court cannot say, as a matter of law, that there was not remaining sufficient legal evidence, unexplained and uncontradicted, to authorize the finding of an indictment against Rodriguez. The oral admissions made by Rodriguez and the signed confession of Rodriguez constituted legal and competent evidence against himself to such a degree that the Grand Jury was warranted in finding the indictment against Rodriguez.
This does not mean that this court sanctions the practice of introducing a codefendant’s statement, which was given subsequent to the completion of the act constituting the crime charged, without first giving to the Grand Jury proper and cautionary advice that such statement would not be binding upon the other defendant, and as to such other defendant, such a statement would be incompetent and hearsay evidence.
The objection, that the defendant Rodriguez was not promptly arraigned and consequently his confession obtained during such delay was not a voluntary statement and therefore constituted inadmissible and illegal evidence, is a matter of defense to be raised by the defendant at the time of the trial. In this case, such objection is not a valid reason for the dismissal of the indictment at this stage of the proceedings.
The motion to dismiss the indictment by the defendant Rodriguez is denied.
*314 II.
Motion of Defendant Carde for Dismissal of Indictment
The defendant Carde asked for an order to dismiss the indictment as to himself on the ground that it was found by the Grand Jury on insufficient legal evidence and upon the further grounds that hearsay, incompetent, conclusory, irrelevant, immaterial and illegal evidence was received by the Grand Jury; that no effort was made by the District Attorney, in presenting the evidence to the Grand Jury, to exclude incompetent testimony nor any effort made to advise the Grand Jury that evidence offered was, if otherwise competent, binding upon the defendant, Rodriguez, but not the defendant, Carde.
Carde was picked up at his home in Medina, New York, on Sunday, January 22, 1961 at about 8:30 or 9:00 r.m. Rodriguez had been taken into custody at about 7:00 p.m. on Sunday, January 22,1961 and he had made certain statements which had implicated Carde.
The defendant Carde is unable to speak the English language and there is some question as to whether or not he understands the English language. Carde was questioned by a State Trooper, through an interpreter, at the Medina Police Station on January 22, 1961 and a typewritten statement was taken and signed by Carde at that time.
The statement of Garde was introduced into evidence in the proceedings before the Grand Jury. In substance Carde stated that on the night of January 21,1961 he was in the Green Front restaurant with the defendant, Rodriguez, and Vargus; that between 12:15 and 12:30 a.m., January 22, 1961, Rodriguez and Vargus asked a fellow (Torres) in the restaurant if he would take them to Shelby and that this fellow had a girl (Russell) with him; that Vargus, Rodriguez and Carde got in the back seat of the 1955 Chevrolet automobile and Torres and the Russell girl sat on the front seat and that Torres drove the car to Shelby and up one of the side roads; that Rodriguez told Torres to drive down the side road because he had a girl friend down there and that when Torres had driven down the road a little way Rodriguez told him to stop the car. Carde went on to say in the statement that the man (referring to Torres) stopped the car and made Carde get out; that Rodriguez then told Torres to get out, but that Torres did not get out of the car, but that Carde and the Russell girl did get out; that Rodriguez then shot Torres because he told him that if he did not get out of the car he would shoot him, and Carde then heard three shots fired and he (Carde) started to run. Carde further stated that the *315 Bussell girl started to run after him and he then heard another shot and the girl screamed for help and fell and Carde kept on running and he then walked all the way to Medina and went home. In the statement Carde further stated that Rodriguez and Vargus did this thing because they wanted to get the man’s car and his money and that Torres got shot because he did not get out of the car like he was told and that the Russell girl got shot because she tried to run away. Carde also said in his statement that Rodriguez showed the gun to him three days before and at that time Rodriguez said that he was going to take the gun and kill someone.
Aside from the medical testimony as to the cause of death of the victims, this statement of Carde was, in substance, the only competent and legal evidence introduced by the People in the case against Carde. The question posed is, does the information contained in that extrajudicial admission made by Carde warrant a Grand Jury to find an indictment against Carde for the crime of murder in the first degree? The signed statement of Carde can hardly be designated as a confession as it does not contain a direct acknowledgment of guilt. It may be construed to include inculpatory acts; such as getting into the victim’s car at 12:30 in the morning with the codefendant Rodriguez and Vargus and riding to the scene of the crime and being present at the time of the slaying. The statement of Carde does not constitute direct evidence, but is in the nature of circumstantial evidence (People v. Bretagna, 298 N. Y. 323, 326). The Bretagna case was referred to by Judge Fuld in a note annexed to his opinion in the case entitled People v. Leyra (1 N Y 2d 199, 206). The note is as follows: 11 The circumstantial nature of the proof is not affected by defendant’s so-called ‘ admissions ’ to Captain Meenahan, for the rule is that ‘ an extrajudicial admission by a defendant, not amounting to a confession because not directly acknowledging guilt * * * is circumstantial, not direct evidence.’ ” In view of the fact that the statement of Carde is circumstantial evidence, the Grand Jury in using such statement must apply to it the usual rules which pertain to circumstantial evidence. Such rules were stated in People v. Woltering (275 N. Y. 51, 61) where the court approved the rules applying to circumstantial evidence as laid down in the case entitled People v. Bennett (49 N. Y. 137, 144). The court stated such rules to be as follows: “ In determining a question of fact from circumstantial evidence, there are two general rules to be observed. 1. The hypothesis of delinquency or guilt should flow naturally from the facts proved, and be consistent with them all. 2. The evidence must be such as to exclude, to a moral certainty, every *316 hypothesis but that of his guilt of the offense imputed to him, or, in other words, the facts proved must all be consistent with and point to his guilt not only, but they must be inconsistent with his innocence.” The court in People v. Eckert (2 N Y 2d 126, 129, supra), in speaking about an indictment based upon circumstantial evidence, stated: ‘ ‘ But, as we pointed out rather recently, this does not mean that absolute or metaphysical certainty is required. Whether someone else may possibly have caused the death is not the issue. The issue is: does the evidence logically point to the defendant’s guilt, and exclude, to a moral certainty, every other reasonable hypothesis * * * In this instance that determination was for the Grand Jury in its capacity as arbiter of credibility and of the weight to be given to the evidence (People v. Vaccarella, 257 App. Div. 461 ; People v. Bob, 233 App. Div. 94). That a trial jury might not convict on this evidence is not our concern. The Legislature has specifically relegated the question of whether a trial jury would return a conviction on this evidence to the judgment of the Grand Jury (Code Crim. Pro., § 251).” (Italics supplied.)
There is no direct evidence in the statement of Carde to show he had conferred with Rodriguez and had agreed to engage in an enterprise to kill or to commit robbery. The District Attorney argues that, by the defendant Carde saying that “ Rodriguez and Vargus did this thing because they wanted to get this man’s car and his money ” Carde knew that a robbery had been planned and that he was a party to it; however, it may be logically argued that Carde found out the reasons for the slayings after they occurred and not before. The statement is not clear as to when Carde found out the motive for the killings or if he deduced the reason from the fact that Vargus ordered Torres out of the car at about the time the killings occurred. This interpretation can be found in that part of Carde’s testimony where he said ‘ ‘ Artemio shot the driver because he told him that if he didn’t get out of the car he would shoot him.” Some merit for this interpretation of Garde’s statement is found in his actions when he said he ran away from the car when he first heard the shots. It was the obligation of the Grand Jury to determine the weight to be given to the evidence found in the statement of Carde (People v. Eckert, supra).
The District Attorney attempted to bolster the case against Carde by introducing testimony, which consisted of admissions in oral statements made by Rodriguez after the slayings had occurred and while he was in the custody of the State police. Such evidence was incompetent as to Carde and constituted illegal testimony as to him. The introduction of such incom *317 petent proof was of a damaging nature to Carde and the fault was aggravated because it occurred so many times that there cannot be any doubt that it was highly prejudicial to Carde. The court will set forth examples of the prejudicial testimony found in the Grand Jury minutes to illustrate this point.
Sergeant Stevens was questioned as to certain statements made by Rodriguez, and answered as follows:
“ Q. Did he tell you anything about any conversation he had had with Carde about taking a ear? A. Yes. They discussed taking the car three days prior to this. ” * *
“ Q. At this time did he say when he first talked to Carde about taking the car? A. Yes. He still maintained it was about three days before this Saturday night.
“ Q. Did he say when this conversation took place about three days before? A. No, I don’t recall if he did.
" Q. Did Rodriguez tell you what he said to Carde at that time, and what Garde said to him? A. Well, there came a time in there when they discussed having a gun and Rodriguez told Carde that he could get a car to go to Florida, that he had a gun and that he would get the gun and they would take the car away from somebody and go to Florida and get employment.
“ Q. Did he say what Carde said to him at that time? A. No, I don’t recall that he did. <s ® #
‘ ‘ Q. Did he say whether or not Carde had any weapon on [sic] instrument with him? A. Carde had a knife with him.
“ Q. Rodriguez told you that? A. Yes.
“ Q. Did he tell you when he first saw Garde’s knife? A. No I don’t think he told me that. He told me that Carde also had a knife with him, and then he also had this knife in his pants, the same as he had his gun.
‘ ‘ Q. At that time or any other time did they talk about what they would do if necessary to get a car? A. Yes, they said at that time, he told Carde at that time, if it was necessary he would kill somebody to take the car. * * *
“ Q. What can you recall that he did say about what Carde did or was doing after the first shot was fired? A. Well, the one time he told me that Carde had held this knife against Jose to try to enforce his demand that he get out of the car and give the car to them. He said he pulled the knife and was holding it against Jose’s neck. * * *
“ Q. * * * Did he say what the girl did after being shot? A. All she did was run. He said she ran about fifty feet. He later said about thirty feet and dropped. And he said Carde ran up to where the girl was and he came back, threw down his knife and then he left. He claimed that he got frightened.
*318 “ Q. Did he say what Carde said at that time in regard to killing if necessary? A. It seems to me Carde did say something about it. I can’t recall just what he said.”
As a further illustration of the prejudicial testimony, the witness Trooper Penfold was interrogated and gave the following-answers :
11 Q. What did Rodriguez say that he said to Carde about three days before this January 22? A. He said that he had a gun, he told Carde that he had a gun and things were pretty bad for him up here and he said lets get a car and go to Florida, and he said then he was going to sell the car to get back to Puerto Rico.
“ Q. Did he say what car? A. Well, Carde said he would go along- with it. He said, 1 Good, all right ’, and he did say, he specified that he had a gun and if necessary, ‘ we ’ll kill him ’. # *
“ Q. What do you recall Rodriguez said in regard to the conversation between him and Garde on Saturday morning, oh, maybe just before the murder day, before it? A. The day before the murder, they said they were definitely going to get a car. They didn’t know whose but they did say it would be a good idea that whoever’s car they got they would have to kill them if necessary to cover up their previous crime of taking the car.
“ Q. Rodriguez told you that? A. That is correct.
“ Q. Did he say what Carde said back to him? A. It would amount to this: that Rafael understood what Artemio had gone along- with and that he was willing to go along with this thing, to kill if necessary on the thing.”
In questioning Mrs. Linck, the Spanish interpreter, the following information was brought out:
“ Q. Rodriguez said that he had a gun? A. Yes, I believe he did and Rodriguez told Carde that he was going to take a car and he would kill if necessary.
“ Q. But at that time they did not mention any particular car? A. As I recall, no.
“ Q. Did Rodriguez tell you what Garde’s reply was, if any this three days before this Saturday? A. Carde agreed to help him take a car.
“ Q. Carde told you that? A. I haven’t heard the tape since. I don’t wish to say anything of which I am not sure.”
All of the above answers, which implicated Carde, constituted irrelevant and hearsay testimony as to Carde. They were not admissions made by Carde, but such answers constituted oral statements made by Rodriguez. The written statement of Rodriguez, which was introduced in evidence, was read to the Grand Jury without the cautionary advice that such written statement *319 was not binding upon Carde and that the Grand Jury could not use any part of the written statement in determining whether or not an indictment should be reported against Carde. The introduction in evidence of the oral admissions of Rodriguez, which implicated Carde, without the advice that such oral statements constituted invalid evidence as to Carde, was highly prejudicial to the rights of Carde.
The above-quoted testimony discloses a continuous and unremitting effort to establish the guilt of the defendant Carde through incompetent and invalid evidence. This case differs materially from the Rodriguez case, in that the invalid testimony in the Carde case is greater in quantity and the damaging quality of a more serious nature. By the use of such incompetent testimony, an attempt was made to prove to the Grand Jury that Carde on the night of the slaying was armed with a knife; and that prior to the night of the murder he had conspired with Rodriguez to take an automobile by the use of force and violence and to kill if necessary; that Carde had participated in the assault upon Torres in taking his knife and placing it against the neck of Torres. All of this invalid evidence was extremely prejudicial to the rights of Carde.
An impartial review of the testimony as to Carde makes it impossible to say that the jury did not utilize the invalid and incompetent evidence in weighing and interpreting the signed written statement of Carde. The written statement of Carde was open to several constructions as to its meaning and import. Who can say with any assurance that the members of the Grand Jury would have found an indictment against Carde if they had been instructed that all of the above-quoted testimony and the written confession of Rodriguez were not pertinent in deciding as to whether or not to indict Carde. “ Sections 256 and 258 of the Code of Criminal Procedure are protective measures intended to safeguard the defendant’s right to the presumption of innocence, and, therefore, an indictment based extensively on conflicting and hearsay evidence, leading and suggestive questions and prejudicial testimony affords justification for its dismissal.” (People v. Nicosia, 164 Misc. 152, 157.) As to Carde, the incompetent testimony was so extensive and prejudicial to his rights, that, this court is of the opinion that the indictment, as to Carde, cannot be permitted to stand.
The indictment as to the defendant Carde charging him in two counts with the crime of murder, first degree, is hereby dismissed. The District Attorney is directed to resubmit the case against Carde to the next Orleans County Grand Jury.