Martin M. Kolbrener, J.
The defendant, an attorney, has been indicted on six counts, four of which are felonies and two misdemeanors, and moves to inspect the Grand Jury minutes and to dismiss the indictment as insufficient in law.
The indictment stems from the defendant’s alleged acts in aiding and abetting his codefendant, Meli, an attorney in the employ of the County Attorney’s office, in receiving a bribe to violate his (Meli’s) duty as a public officer and employee of the County of Nassau.
Bach of the provisions of the Penal Law and the Nassau County Government Law referred to in each of the counts of the indictment relates to the misdeeds of public officers or employees. This defendant is not such a public officer or employee. Despite this, he may be indicted under these sections because in each count he is charged with aiding and abetting, and if the charges are proven he is a principal under section 2 of the Penal Law. (People v. Mullens, 292 N. Y. 408, 412.)
The court has read the minutes of the testimony before the Grand Jury relating to this defendant and has inspected the exhibits. It appears that the codefendant Meli was employed in the County Attorney’s office of Nassau County as a title examiner, and therefore knew that the county was prepared to pay approximately $120,000 for a certain parcel of property then under consideration by the county. Meli procured another attorney as his co-conspirator (this man obtained immunity by reason of his testimony before the Grand Jury) to solicit the owners of the property to become their attorney in the condemnation proceeding. Meli and his co-conspirator thereupon agreed to share in the contingent fee to be paid by the owners, which was one third of all sums over $90,000, which sum had been offered previously to the owners. Meli’s co-conspirator, then, with the “ inside information ” obtained an offer of $120,000 from the county in behalf of his “ clients ”, the deal was consummated, and he received a check of slightly more than *597 $10,000 for Ms fee as attorney. His problem now was how to ‘1 pay off ’ ’ Meli, who insisted on cash. The co-conspirator refused to pay cash because, as he put it, he did not want to pay income taxes on the money that he was paying out. Between them they devised the scheme of paying the money through defendant Beck, who so far as the minutes show, had no part in the transaction thus far.
Beck was a practising lawyer since 1955, had a law partnership and served as counsel for other lawyers in negligence cases and other litigation and title closings. He had known Meli for some years and permitted Meli to use his office to receive telephone calls and mail as an office associate. In addition, he appeared as counsel for Meli in numerous cases, received moneys in his behalf and closed titles for him.
The sole evidence which implicates Beck in this alleged illicit arrangement between Meli and the co-conspirator was the testimony by the co-conspirator that $5,000, earmarked for Meli, was given by the co-conspirator to Beck in the form of a check. This is admitted by Beck in Ms testimony before the Grand Jury. He states that he thought this transaction to be one of the many escrow transactions he had for Meli. However, there is damaging testimony by Meli’s co-conspirator which incriminates Beck to this extent — he says that he told Beck that the check in question was a fee to cover a ‘1 condemnation ’ ’ matter, involving the Craftsman Construction Corporation. His testimony is that he told Beck that he needed a means to explain the payment of the check. Beck, he says, allegedly told him that they could overcome this problem by agreeing that Beck acted as co-counsel in the case and had called Mm up a number of times, met with him and consulted with Mm on the matter. The co-conspirator wanted a receipt and the testimony is that Beck is alleged to have prepared a receipted bill on his own stationery, which in effect stated that the money received was for services rendered and consultation, and Beck marked the bill “Paid” and dated it. The record fails to disclose any other testimony linking Beck with the alleged illegal acts of the defendant Meli and his co-conspirator.
Beck is not alleged to have kept any of the illicit moneys. It is not alleged, at any point, that Beck was part of the original conspiracy but only that he aided and abetted Meli in receiving of this illegal money.
The serious question then is — was Beck put on notice that the money he was about to receive was illicit money, because at the time of its delivery he was told that it involved a “ con *598 demnation ’ ’ matter? With this information did he help to cover up something illicit knowing that Meli was in the County Attorney’s office and was receiving a fee in a condemnation matter while an employee of the County Attorney’s office?
It is true that the defendant is presumed innocent until proven guilty beyond a reasonable doubt, even before the Grand Jury (People v. Bareika, 11 A D 2d 292). I cannot say what weight the Grand Jury gave to the testimony or what weight they failed to give to other testimony or to evaluate the defenses. (People v. Rodriguez, 28 Misc 2d 310; People v. Buffalo Gravel Corp., 195 N. Y. S. 940, 945; People v. Blair, 17 Misc 2d 265.) There was much testimony before the Grand Jury by the defendant and others of an exculpatory nature. Measured by the yardstick of section 251 of the Code of Criminal Procedure the court finds that the indictment is sufficient, in that taken alone, unexplained and uncontradicted, the testimony meets the minimal requirements of the statute. It is true that the co-conspirator’s testimony did not specify that this was a Nassau County condemnation matter and it may well be that a State or Federal condemnation matter would not be illegal for Meli as a Nassau employee, but unfortunately for this defendant the co-conspirator has testified that the defendant offered to cover up this transaction, as counsel, to make the conduit appear as a legal transaction and this indicates a knowledge of the true nature of things. There may be a perfectly legal, justifiable reason which Beck may supply at the trial, but this it not for me to determine on this motion to dismiss the indictment.
The 5th and 6th counts of the indictment pertain to the County Government Law of Nassau County and charge violations of sections 2202 and 2203, respectively (L. 1936, ch. 879, as amd.; financial interest in the transaction). The testimony is devoid of any proof that Beck had a financial interest in the transaction. Therefore, the motion to dismiss the indictment is granted as to counts 5 and 6 and the motion directed to counts 1 to 4 is denied. Since all of the details of the evidence before the Grand Jury pertaining to this defendant have been set forth in this opinion I deem it unnecessary to consider any further the motion for an inspection of the minutes. It is therefore
ordered, that the motion is denied, except as to counts 5 and 6 of the indictment, which are dismissed.